## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| **KERRY IRENE HOLYOAK,** | ) | |
| Plaintiff, | ) | |
| v. | ) | **Civil Action   6:24-CV-1784-CEM-LHP** |
| **BRIDGECREST ACCEPTANCE** | ) | |
| **CORPORATION, BRIDGECREST** | ) | |
| **CREDIT COMPANY, LLC,** as Agent and | ) | |
| Servicer for CARVANA, LLC, and | ) | |
| **CARVANA, LLC,** | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff, **Kerry Irene Holyoak**, brings this Second Amended Complaint against Defendants **Bridgecrest Acceptance Corporation, Bridgecrest Credit Company, LLC**, as agent and servicer for **Carvana, LLC**, and **Carvana LLC**, and in support thereof alleges as follows:

**1. Parties**

1. Plaintiff, **Kerry Irene Holyoak**, is a natural person residing at **3520 S. Nova Road, Lot 448, Port Orange, Florida, 32129**, and at all relevant times was a consumer as defined by the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. All references to exhibits throughout this complaint are related to the Affidavit of Kerry Irene Holyoak which has been filed in support of this complaint.

2. Defendant, **Bridgecrest Acceptance Corporation** ("BAC"), is a Delaware corporation authorized to conduct business in the state of Florida, with its principal place of business located at 7300 E Hampton Ave, Suite 101, Mesa, Arizona, 85209. BAC is engaged in the business of purchasing, holding, and securitizing auto loan receivables, including the plaintiff's Promissory Note and/or Retail Purchase Agreement, and may have assigned or delegated servicing and collection responsibilities to **Bridgecrest Credit Company, LLC**.

3. Defendant, **Bridgecrest Credit Company, LLC** ("Bridgecrest"), is a Delaware limited liability company authorized to conduct business in the state of Florida, with its principal place of business located at **7300 E Hampton Ave, Suite 101, Mesa, Arizona, 85209**. Bridgecrest acts as an agent and servicer for **Carvana, LLC**, and is engaged in the business of servicing auto loans and collecting debts in the state of Florida.

4. Defendant **Carvana, LLC** ("Carvana") is a Delaware limited liability company authorized to conduct business in Florida, with its principal place of business located at **1930 W. Rio Salado Parkway, Tempe, Arizona 85281**. Carvana is an auto retailer that directly contracts with consumers, including Plaintiff, for the purchase and financing of vehicles. Carvana entered the original Retail Purchase Agreement -Florida-, Retail Installment Contract and Security Agreement, hereinafter collectively referred to as "**Contracts**" with Plaintiff for the financing of the vehicle that is the subject of this action and, on information and belief, delegated certain collection and servicing rights to Bridgecrest Acceptance Corporation and/or Bridgecrest Credit Company, LLC.

5. For the purposes of this Complaint, **'Bridgecrest'** shall refer collectively to both **Bridgecrest Acceptance Corporation** and **Bridgecrest Credit Company, LLC**, unless otherwise specified. These entities are affiliated and work together in the servicing, securitization, and collection of auto loans, including the plaintiff's Promissory Note and/or Contracts.

## 2. Jurisdiction and Venue

6. This Court has **federal question jurisdiction** over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim under the **Fair Debt Collection Practices Act (FDCPA)**, 15 U.S.C. § 1692 et seq.

7. This Court has **supplemental jurisdiction** over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as the state law claims are so related to the federal claim that they form part of the same case or controversy.

8. **Personal Jurisdiction:** Both Defendants engage in continuous and systematic business within the state of Florida, establishing sufficient minimum contact to warrant personal jurisdiction under Florida's long-arm statute and the Due Process Clause.

9. **Venue** is proper in this district under 28 U.S.C. § 1391(b) because the Contracts between Plaintiff and Carvana were executed within Florida, and Defendants' collection activities and repossession actions directly impacted Plaintiff in this district, and the Defendants conduct business in this district.

## 3. Factual Allegations

10. On or about **December 15, 2021**, Plaintiff entered Contracts for the purchase and financing of a 2016 GMC Sierra 2500HD with **Carvana, LLC**. The Contracts governed the terms of the loan and payments for the vehicle, and on information and belief, **Carvana** delegated certain rights to **Bridgecrest**, to function as its agent in servicing and collecting payments under the contract. This information was disclosed in an email dated December 20, 2021, under a section titled "**Your Payment Information**", nevertheless, Defendant, **Carvana, LLC**, **failed to properly and legally assign the Contracts,** as witnessed on page 5 in the section on "Assignment" which is marked as "NA" clearly stating **no valid legal assignment of the contract** to any third-party entity, including **Bridgecrest**. Under Florida law, a valid assignment of debt must clearly establish the transfer of rights from the original creditor to the assignee.

11. Carvana's failure to properly assign the contract means that Bridgecrest lacked the legal authority to collect payments or repossess the vehicle. See **Deutsche Bank Nat'l Trust Co. v. Brock, 63 So. 3d 796 (Fla. Dist. Ct. App. 2011)** (holding that an entity attempting to enforce a debt must demonstrate a valid assignment to have the legal right to collect or repossess).

12. Despite Carvana's attempt to delegate collection duties to Bridgecrest, no legal assignment was provided to Plaintiff, as required by Florida law, which mandates that assignments be in writing and clearly disclosed to the borrower. Without such an assignment, Bridgecrest lacked any authority to collect payments or repossess the vehicle. In **CitiMortgage, Inc. v. Barabas, 975 N.E. 2d 805 (Ind. 2012)**, it was noted that only a validly assigned entity may enforce a debt, thus, Bridgecrest's actions were invalid due to the lack of legal assignment.

13. Failure to provide a valid assignment under **Florida law** invalidates any subsequent collection efforts by an entity acting as an assignee without proper legal standing. This is supported by **Citimortgage, Inc. v. Barabas, 975 N.E. 2d 805 (Ind. 2012)**, where the court noted that a party without a valid assignment cannot enforce the terms of the loan. Since no valid assignment was ever effectuated, Bridgecrest's collection and repossession activities were **void ab initio**, rendering their actions not just **improper** but **legally invalid from the outset**.

14. Furthermore, all defendants failed to inform Plaintiff of the changes in ownership or financial treatment of her promissory note and/or contracts. The **undisclosed securitization and hypothecation** of the promissory note and/or contracts represents a

**deceptive and unfair trade practice** under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).

15. By failing to inform Plaintiff of the changes in ownership or financial treatment of her promissory note and/or contracts, the defendants have misled Plaintiff about the nature of the debt and her obligations, constituting **fraud**, **misrepresentation** and **violations of consumer protection laws**.

16. In cases where securitization or hypothecation of a loan occurs, it is material information that the borrower must be made aware of to understand the nature of the debt and potential changes to their obligations. By **failing to disclose the securitization** of the Promissory Note and/or Contracts, Defendants deprived Plaintiff of this essential information, constituting **fraud and misrepresentation** under **Florida Deceptive and Unfair Trade Practices Act (FDUTPA)** and the **Fair Debt Collection Practices Act (FDCPA)**.

17. The **nondisclosure of securitization** and **hypothecation** of Plaintiff's promissory note and/or Contracts is central to Plaintiff's claims under **Florida Deceptive and Unfair Trade Practices Act (FDUTPA)**. The failure to disclose such critical information about the loan's ownership and use constitutes **fraud and misrepresentation.** In **Santana v. U.S. Bank Nat'l Ass'n, 2014 WL 6946667 (C.D. Cal. Dec. 8, 2014)** and **Rojas v. CitiMortgage Inc., 2011 WL 2711370 (E.D. Cal. July 13, 2011)** similar failures to disclose securitization were deemed **unfair or deceptive trade practices,** supporting claims of misrepresentation when borrowers were denied material facts about their loan.

18. Starting in **December 2021, Bridgecrest,** acting on behalf of **Carvana**, began collecting payments under the Contracts. The plaintiff, unaware that **Bridgecrest** lacked proper legal

authority, began making payments to Bridgecrest in accordance with their demands. The **lack of a valid assignment makes Bridgecrest's actions unlawful from the outset**.

19. At all relevant times, Carvana and Bridgecrest operated in concert, with Bridgecrest's actions reflecting Carvana's directives, thus rendering their actions inseparable in relation to the contractual relationship with Plaintiff.

20. **Bridgecrest** continued to collect payments throughout 2022, 2023 and 2024. **Bridgecrest's collection activities** were thus **unlawful**, as they were based on the false premise that they had a legal right to collect payments from Plaintiff. This constitutes a violation of the **FDCPA** as well as a breach of fundamental contractual principles, as Plaintiff was **misled** into paying an entity that had **no legal authority** to collect payments.

21. On **May 10, 2024**, Plaintiff formally requested that Bridgecrest **validate the alleged debt** pursuant to the **Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692g(a)**. The FDCPA mandates that, upon such a request, a debt collector must provide **written validation** of the debt, including the amount owed and the identity of the original creditor. Despite this formal request, documented in **Exhibit A** of Plaintiff's affidavit, Bridgecrest **failed to provide adequate validation** and continued to pursue collection actions in violation of **15 U.S.C. § 1692g(b)**, which explicitly requires that all collection activities cease until validation is provided.

22. Plaintiff subsequently made **four additional requests for validation**, dated **June 11, 2024**, **June 26, 2024**, **July 9, 2024**, and **July 29, 2024**, as documented in **Exhibits C, E, H, and L**. Each of these requests was sent via **Registered or Priority Mail**, with return receipts confirming that Bridgecrest received the letters, yet they **continued collection efforts** and ultimately repossessed Plaintiff's vehicle. By failing to validate the debt and

ignoring Plaintiff's repeated formal requests (Exhibits A, C, E, H, and L), Bridgecrest **willfully disregarded federal law**, causing Plaintiff substantial financial and emotional harm.

23. On multiple occasions, starting in May 2024, Plaintiff formally requested that Bridgecrest validate the debt, as required under the **Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692g(a)**. Despite these numerous requests, Bridgecrest consistently refused to provide the necessary validation, failing to confirm the amount owed, the identity of the original creditor, or any supporting documentation. Under **15 U.S.C. § 1692g(b)**, all collection activities must cease until the debt is validated. The Defendants' actions were not merely negligent but showed a **blatant refusal to adhere to federal law** designed to protect consumers from unlawful debt collection practices.

24. On or about **August 29, 2024**, Bridgecrest **wrongfully repossessed** Plaintiff's vehicle without providing proof of a valid assignment of the contract or legal right to take possession. Plaintiff had disputed the debt and requested validation, yet Bridgecrest proceeded with repossession without offering any legal justification. As the original contracting party, Carvana failed to ensure that proper legal procedures were followed, compounding the harm.

25. Following Bridgecrest's failure to validate the debt, Defendants escalated their collection efforts by issuing a **Notice of Right to Cure** and aggressively pursuing repossession. These actions, taken without validation, reflect an **unlawful** and **reckless** approach to debt collection. By proceeding despite Plaintiff's requests for validation, Defendants deliberately ignored her legal rights, pursuing their interests through coercive and unlawful measures.

26. As a full-time RVer, Plaintiff relied on her repossessed vehicle as both transportation and an essential part of her home. Its wrongful repossession severely disrupted her ability to protect her family's well-being, particularly during **Hurricanes Helene and Milton**, when she faced life-threatening conditions without the means to evacuate or safeguard her RV. This wrongful act forced Plaintiff and her family to endure **severe emotional distress**, uncertainty, and fear during the storms and the immediate aftermath.

27. Plaintiff's inability to escape the life-threatening conditions caused by **Hurricane Milton** due to Defendants' wrongful actions left her unable to protect her family or safeguard her home. The vehicle sustained **$29,000 in damages** to its electrical systems and flooring, which were submerged in floodwaters. The emotional strain of being unable to relocate her RV and witnessing the damage to her home compounded her distress.

28. Plaintiff's **emotional distress** and **reputational harm** were exacerbated by Defendants' wrongful repossession during life-threatening storms. Courts have recognized that emotional harm, when tied to a defendant's intentional misconduct, supports the award of higher damages. In **Buchanan v. Northland Grp., Inc., 776 F.3d 393 (6th Cir. 2015)** and **McCollough v. Johnson, Rodenburg & Luinger, LLC, 637 F.3d 939 (9th Cir. 2011)**, courts awarded significant damages for emotional distress resulting from wrongful debt collection and repossession.

29. The wrongful repossession of Plaintiff's vehicle during **Hurricanes Helene** and **Milton** left Plaintiff and her family in severe emotional distress, unable to evacuate to safety. This emotional trauma was compounded by the **financial harm** caused by the repossession, which significantly lowered Plaintiff's credit score. The **$29,000 in flood damage** sustained by the RV and the drop in her credit score led to **ongoing financial**

strain. Plaintiff seeks **$300,000** in damages for emotional distress and reputational harm caused by Defendants' actions.

30. Plaintiff's financial distress was further aggravated by the **wrongful repossession**, which led to a significant drop in her credit score. This drop has severely hindered her ability to secure a mortgage and increased her financial insecurity. The **long-term impact** of this repossession has left Plaintiff **unable to pursue financial opportunities**, further compounding the harm caused by Defendants' unlawful actions.

31. Bridgecrest's continued refusal to validate the debt resulted in a **delinquent credit report**, as documented in the **Affidavit of Kerry I. Holyoak, Exhibit F**. Their repeated denials, as evidenced by **Exhibits B, G, and I**, caused Plaintiff's credit score to drop from **732 to 522**, severely damaging her ability to secure housing and other financial opportunities. The ongoing financial harm caused by this drastic drop in her credit score has compounded Plaintiff's financial insecurity.

32. Plaintiff continues to suffer **ongoing financial losses**, **damage to her credit**, and **reputational harm** due to Defendants' **wrongful collection** actions, **repossession** of her vehicle, and **failure to provide transparency** regarding the loan servicing. The compounded effects of these actions have left Plaintiff in a state of **long-term financial insecurity** and **emotional distress**.

33. **Carvana,** as the original contracting party, failed to ensure that proper legal procedures were followed.

34. On September 5, 2024, Plaintiff commenced this action by filing a complaint in the Circuit Court of the Seventh Judicial Circuit in and for Volusia County, Florida Cause No. 2024 12882 CICI.

35. On September 26, 2024, Plaintiff filed an Amended Complaint. Plaintiff effectuated service of process for both the original Complaint and the First Amended Complaint upon Defendant Bridgecrest Acceptance Corporation, in full compliance with Federal Rule of Civil Procedure 4(h), which governs service of process on corporations. Service was properly executed through a private process server on September 13, 2024, for original Complaint service and September 27, 2024, for Amended Complaint service, providing Bridgecrest with adequate notice of the claims brought forth in this action.

36. Plaintiff intends to serve additional Defendants, Bridgecrest Credit Company, LLC and Carvana, LLC, through the same private process server in accordance with Rule 4(h) following the issuance of each Summons by the Clerk of this Court. Personal service will be executed at the address of each defendant's registered agent, Corporation Service Company, to ensure proper and timely compliance with Rule 4.

**Count I – Violation of the Fair Debt Collection Practices Act (FDCPA)**

37. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 36 as though fully set forth herein.

38. Defendants failed to provide proper evidence of legal assignment and chain of title, calling into question their authority to collect payments or repossess Plaintiff's vehicle. Under **Heintz v. Jenkins, 514 U.S. 291 (1995)**, the **FDCPA** applies to debt collection practices, including repossessions. As held in **Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162 (9th Cir. 2006**), failure to validate a debt is a violation of the FDCPA, which Defendant Bridgecrest committed by **repossessing** Plaintiff's vehicle **without proper validation**.

39. Despite Plaintiff's formal debt validation requests, beginning on **May 10, 2024** (Exhibit A), and repeated attempts on **June 11, 2024**, **June 26, 2024**, and **July 9, 2024** (Exhibits C, E, and H), Bridgecrest failed to validate the debt and instead continued collection efforts. Bridgecrest's repeated refusals to validate the debt are documented in **Exhibits B, G, and I**, which constitute violations under **15 U.S.C. § 1692g(b)**, which directly resulted in financial harm to Plaintiff. The wrongful collection actions caused a significant drop in Plaintiff's credit score, from **732** to **522**, leading to increased interest rates, loss of access to favorable financial terms, and substantial long-term financial damage.

40. Bridgecrest violated **15 U.S.C. § 1692e** by making **false representations** regarding its right to collect the debt and **§ 1692f** by engaging in **unfair practices,** including continuing collection efforts and repossession without legal standing.

41. Bridgecrest's continuation of collection efforts and repossession of Plaintiff's vehicle without validation of the debt is a direct violation of the **FDCPA**, which mandates the cessation of all collection efforts until proper validation is provided

42. Defendants' **failure to disclose the securitization and hypothecation** of Plaintiff's promissory note and/or contracts also deprived Plaintiff of transparency required under the **FDCPA**.

43. Defendants' failure to validate the debt upon Plaintiff's formal request on **May 10, 2024**, followed by their decision to repossess the vehicle on **August 29, 2024**, constitutes a direct violation of **15 U.S.C. § 1692g(b)**, which mandates cessation of all collection activities until validation is provided.

44. Under **15 U.S.C. § 1692g(b)**, debt collectors must cease collection activities until they provide validation of the debt. Despite receiving multiple requests for debt validation,

Bridgecrest continued to pursue collections, including repossessing Plaintiff's vehicle, in direct violation of federal law. See **Russell v. Absolute Collection Servs., Inc., 763 F.3d 385 (4th Cir. 2014).**"

45. Defendants' ongoing collection actions, despite Plaintiff's requests for validation, directly violated **15 U.S.C. § 1692g(b)**, which mandates that collection activities cease until proper validation is provided. The rulings in **Russell** and **Clark** support the cessation of collection efforts until the debt is validated.

46. Carvana, LLC, Bridgecrest Acceptance Corporation, and Bridgecrest Credit Company, LLC are **jointly and severally liable** for the harm caused. Under Florida law, a principal is liable for the actions of its agents, as demonstrated in Laster v. T-Mobile USA, Inc., 407 F. Supp. 2d 1181 (S.D. Cal. 2005), where vicarious liability attaches when agents engage in unlawful conduct under the principal's direction.

47. Bridgecrest's actions violated multiple provisions of the FDCPA, including:

   a. 15 U.S.C. § 1692e: Prohibiting false, deceptive, or misleading representations related to the collection of a debt. By collecting payments without legal authority and implying a right to do so, Bridgecrest **misled** Plaintiff. (Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573 (2010)).

   b. 15 U.S.C. § 1692f: Prohibiting unfair or unconscionable means to collect a debt. Bridgecrest's continuation of collection activities without validation, culminating in the **unlawful repossession**, violated this section. (Currier v. First Resolution Investment Corp., 762 F.3d 529 (6th Cir. 2014)).

   c. Without a valid assignment of Plaintiff's contract, Defendants lacked the legal right to collect payments or repossess the vehicle. The failure to validate or provide proof

of assignment under Florida law, including the requirement to disclose the chain of title, directly renders the repossession wrongful and unauthorized. Florida law, as recognized in **Deutsche Bank Nat'l Trust Co. v. Brock, 63 So. 3d 796 (Fla. Dist. Ct. App. 2011)**, mandates that only a valid assignee may enforce a debt.

48. Bridgecrest's collection activities, particularly the **wrongful repossession**, caused **significant financial harm**, **emotional distress**, and **reputational damage** to Plaintiff, exacerbating her inability to evacuate during hurricanes and severely impacting her creditworthiness. As confirmed in Russell, emotional distress and reputational harm are recoverable under the **FDCPA**.

49. Plaintiff seeks the following damages as a direct result of Defendants' actions:

    a. **Economic damages** totaling **$474,238.30**, including:

        1. $21,874 in **unauthorized payment collections.**

        2. $11,540.50 for **lost property** from wrongful repossession.

        3. $21,005.40 for **repossession costs**, including loss of vehicle use.

        4. $29,000 in **damages to Plaintiff's RV** during Hurricane Milton.

        5. $87,369.60 **replacement cost of vehicle**, calculated as the cost to borrow the same $60,000 loan plus the cost of the higher interest rate that will be charged to Plaintiff based on her now lower credit score of 522, which is a direct result of the wrongful repossession.

        6. $303,448.80 for **financial harm** caused by the significant drop in Plaintiff's credit score (from 732 to 522) due to wrongful repossession and negative credit reporting.

i. The total damage to Plaintiff's credit score amounts to $303,448.80, calculated based on the difference in interest rates for mortgages, auto loans, and other forms of credit. For example, Plaintiff's credit score drop from **732** to **522** increases her potential mortgage interest rate from an estimated **3.5%** to **8%** on a loan of **$419,956**, representing **significant financial damage**. Similar increases apply to potential auto loans and other borrowing needs, which collectively account for the credit score impact. The damage to her **creditworthiness** is ongoing and **will continue to impact on her financial opportunities for years to come**. Plaintiff intended to transition from living in an RV to purchasing a permanent home. However, because of Defendants' wrongful repossession and negative credit reporting, Plaintiff's ability to obtain a mortgage has been severely impaired. While Plaintiff had not yet applied for a mortgage, it is now **unlikely** that Plaintiff will qualify for a loan at favorable terms, or at all.  The financial harm includes the **lost opportunity** to secure housing at the original, lower interest rates available to borrowers with higher credit scores.

b. **Emotional distress** and **reputational harm**: **$300,000**.

c. **Statutory damages**: Up to $1,000 as allowed under 15 U.S.C. § 1692k(a)(2)(A).

d. **Attorney's fees** and costs under 15 U.S.C. § 1692k(a)(3), or costs as a pro se litigant.

**Count II – Breach of Contract**

50. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 49 as though fully set forth herein.

51. Plaintiff entered into a financing agreement with **Carvana, LLC**, which was later assigned to **Bridgecrest** for servicing. However, Defendants failed to provide proper documentation to validate the assignment, rendering the collection of payments and the repossession of Plaintiff's vehicle unauthorized and a **breach of contract**. (**Deutsche Bank Nat'l Trust Co. v. Brock**, 63 So. 3d 796 (Fla. Dist. Ct. App. 2011); **Citimortgage, Inc. v. Barabas**, 975 N.E.2d 805 (Ind. 2012)).

52. **Carvana**, as the original creditor, breached its duty by failing to ensure that its agent, **Bridgecrest**, complied with legal requirements in servicing the loan. Defendants **breached the contract by failing to provide proper assignment**, which is necessary to enforce the debt. (**Bank of New York Mellon Trust Co., N.A. v. Conley**, **206 So. 3d 713 (Fla. Dist. Ct. App. 2016)**).

53. Defendants also **failed to disclose** the **securitization** and **hypothecation** of Plaintiff's promissory note and/or contracts, depriving Plaintiff of essential information about her debt and violating the duty of transparency. (**Santana v. U.S. Bank Nat'l Ass'n**, 2014 WL 6946667 (C.D. Cal. Dec. 8, 2014)).

54. **Bridgecrest** further breached the loan agreement **by failing to provide debt validation**, as required under the **FDCPA**, 15 U.S.C. § 1692g, continuing its collection activities and **repossessing** the vehicle **without proper validation**. (**Heintz v. Jenkins**, 514 U.S. 291 (1995); **Russell v. Absolute Collection Servs., Inc.**, 763 F.3d 385 (4th Cir. 2014)).

55. Defendant's actions, including issuing a Notice of Right to Cure and Intent to Repossess without validating the debt (Exhibit D), and ignoring Plaintiff's third request for debt

validation in response (Exhibit E), directly breached the loan agreement and violated the covenant of good faith and fair dealing.

56. As a direct result of Defendants' breach, Plaintiff suffered **financial loss** from **damage to her credit score**, **emotional distress**, and **reputational harm**, exacerbated by her inability to evacuate during **Hurricane Helene** and **Hurricane Milton**. (**Buchanan v. Northland Grp., Inc.**, 776 F.3d 393 (6th Cir. 2015); **McCollough v. Johnson, Rodenburg & Lauinger, LLC**, 637 F.3d 939 (9th Cir. 2011)).

57. Plaintiff seeks **economic damages** totaling $303,448.80, representing the direct financial impact of the **wrongful repossession** and **unauthorized collection activities** on her credit score. This figure includes increased costs associated with higher interest rates on future borrowing. Additionally, Plaintiff seeks **emotional distress damages** of $300,000 for the mental and emotional suffering caused by Defendants' unlawful conduct, including the **wrongful repossession**, which exacerbated Plaintiff's stress during **Hurricane Helene** and **Hurricane Milton**.

58. Plaintiff seeks the following relief:

    a. **Economic Damages**: $474,238.

    b. **Emotional distress and reputational harm**: $300,000.

    c. **Declaratory relief**: A ruling that Bridgecrest lacked authority to collect payments or repossess the vehicle, and the removal of negative credit items.

    d. **Attorney's fees and costs** or pro se costs.

    e. Any other relief deemed just and proper by the Court.

**Count III – Wrongful Repossession**

59. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 58 as though fully set forth herein.

60. Defendants, **Bridgecrest Acceptance Corporation** and **Bridgecrest Credit Company, LLC**, acting under the authority of **Carvana**, wrongfully repossessed Plaintiff's vehicle without proper legal authority, as the assignment of the contract and the right to collect were not validly transferred or disclosed. This repossession occurred despite Plaintiff's repeated requests for debt validation, in violation of **Florida law**.

61. Despite Plaintiff's repeated requests for debt validation, Bridgecrest proceeded with repossession and issued a **Notice of Disposition and Plan to Sell Property on August 30, 2024** (Exhibit M), without ever validating the debt. Additionally, Plaintiff lost personal property during the repossession, including a **tonneau truck cover and 5th wheel trailer hitch** (Exhibit N)."

62. The repossession took place while Plaintiff was facing imminent danger from **Hurricanes Helene and Milton**, events during which access to her vehicle was essential for evacuation. This reckless disregard for Plaintiff's safety further justifies punitive damages under **Florida Statutes § 768.72**, as it demonstrates a level of misconduct beyond mere negligence.

63. Defendants' actions were **reckless** and in **blatant disregard of Plaintiff's legal rights**, causing **financial**, **emotional**, and **reputational harm**. Punitive damage**s** are warranted under **Florida Statutes § 768.72**, which allows for such damages where intentional misconduct or gross negligence is proven. Plaintiff seeks punitive damages in accordance with federal court guidelines, which allow for a **9x multiplier** of compensatory damages when egregious misconduct is involved. Defendants' actions were not merely negligent;

they demonstrated **willful misconduct** with **reckless indifference to Plaintiff's legal rights**. Under **BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996)**, punitive damages are appropriate when a defendant acts with such disregard for the rights of others.

64. The Defendants' collective actions justify punitive damages due to:

    a. **Willful misconduct**: Wrongful repossession and continued collection efforts despite invalid assignment and failure to validate the debt. (**Currier v. First Resolution Inv. Corp., 762 F.3d 529 (6th Cir. 2014)**).

    b. **Intentional misrepresentation**: Defendants repeatedly returned Plaintiff's debt validation requests, citing an address mismatch, despite Plaintiff curing the mismatch.

    c. Defendants' **continued refusal to validate the debt**, despite multiple requests, and subsequent repossession of the vehicle without legal authority demonstrate **gross negligence** and **reckless disregard** for Plaintiff's rights. **Fla. Stat. § 768.72** permits punitive damages where the defendant's actions involve intentional misconduct or gross negligence, as is evident in this case. As established in **Ford Motor Credit Co. v. Byrd, 351 So. 2d 557 (Fla. Dist. Ct. App. 1977)**, punitive damages are warranted for wrongful repossession carried out without lawful justification.

    d. Defendants' continued failure to validate the debt, followed by repossessing Plaintiff's vehicle during life-threatening circumstances, demonstrates **gross negligence** and **reckless disregard** for her rights. This willful misconduct warrants punitive damages as prescribed under **Florida Statutes § 768.72**.

    e. **History of violations**: Defendants were aware of their obligations under the FDCPA, as noted in the thousands of prior **Consumer Financial Protection**

Bureau (**CFPB**) complaints dating as far back as January 2020. Their ongoing behavior demonstrates **willful and reckless misconduct**.

f. **Failure to disclose securitization**: Defendants failed to properly disclose the securitization and hypothecation of Plaintiff's promissory note and/or contracts, further violating Plaintiff's rights.

g. **Wrongful repossession without legal authority**: As the agent for **Carvana**, **Bridgecrest** wrongfully repossessed the vehicle without a valid assignment. **Carvana** failed to ensure that **Bridgecrest** was acting under legal authority, resulting in a collective breach of Plaintiff's rights.

h. **Reckless disregard for Plaintiff's rights**: Defendants knew or should have known that their actions were illegal, justifying punitive damages under **Fla. Stat. § 768.72**.

i. In light of Bridgecrest's deliberate actions during life-threatening events and their **reckless disregard** for Plaintiff's rights, punitive damages under **BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996)** are appropriate.

65. Under **Florida law**, punitive damages are awarded for intentional or reckless conduct, as outlined in **Ford Motor Credit Co. v. Byrd, 351 So. 2d 557 (Fla. Dist. Ct. App. 1977)**, which held that repossession must be based on lawful authority.

66. As a direct result of Defendants' wrongful repossession, Plaintiff seeks:

a. **Economic damages**: $474,238.80.

b. **Emotional distress and reputational harm**: $300,000.

c. **Punitive damages**: $6,977,144.70.

d. **Attorney's fees and costs**.

67. Plaintiff respectfully requests that this Court award all **economic**, **non-economic**, and **punitive damages**, and any other relief the Court deems just and proper.

**Count IV – Unconscionable Contract & Unjust Enrichment**

68. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 67 as though fully set forth herein.

69. The arbitration clause in the contract is both **procedurally** and **substantively unconscionable**. It was presented as a non-negotiable, boilerplate provision, overwhelmingly favoring Defendants. Additionally, by removing this case to federal court and actively participating in litigation, Defendants waived any right to enforce the arbitration clause. In **Morgan v. Sundance, Inc., 596 U.S. ___, 142 S. Ct. 1708 (2022)**, the U.S. Supreme Court held that engaging in litigation without intent to arbitrate can constitute waiver, even without showing prejudice to the other party.

70. Defendants' failure to disclose the **securitization** and **hypothecation** of Plaintiff's promissory note and/or contracts constitutes a violation of **FDUTPA** (Fla. Stat. § 501.204), which prohibits deceptive trade practices. In **Kelly v. Palmer, Reifler & Associates, P.A., 681 F. Supp. 2d 1356 (S.D. Fla. 2010)**, failure to disclose material financial information was deemed a deceptive practice, entitling plaintiffs to compensatory damages.

71. **Bridgecrest** violated the **FDCPA** (15 U.S.C. § 1692g) by failing to validate the debt upon request and continuing collection efforts. In **Heintz v. Jenkins, 514 U.S. 291 (1995)**, the Court confirmed that the FDCPA applies to repossession efforts. Emotional distress damages may also be awarded for such violations, as demonstrated in **McCollough v. Johnson, Rodenburg & Lauinger LLC, 637 F.3d 939 (9th Cir. 2011)**.

a. By collecting payments without validation, **Bridgecrest** acted under false pretenses, unjustly enriching both itself and **Carvana**. **Commerce Partnership 8098 Ltd. P'ship v. Equity Contracting Co., Inc., 695 So. 2d 383 (Fla. Dist. Ct. App. 1997)** supports the argument that unjust enrichment arises when one party benefits at another's expense without legal justification.

72. **Bridgecrest's** collection actions created a financial obligation that Plaintiff fulfilled without any legitimate basis. **Equity and good conscience** require that Bridgecrest return these wrongfully collected payments.

73. As a direct result of Defendants' unjust enrichment, Plaintiff seeks:

a. **Restitution** of all payments wrongfully collected $21,874.

b. **Declaratory relief** that Defendants wrongfully collected these payments and have no right to further payments.

c. **Removal** of all negative credit reports.

d. Any additional relief the Court deems fair and equitable.

**Count V – Violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)**

74. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 73 as though fully set forth herein.

75. Defendants **Bridgecrest Credit Company, LLC** and **Bridgecrest Acceptance Corporation** violated **FDUTPA** (Fla. Stat. § 501.201) by failing to disclose the **securitization** and **hypothecation** of Plaintiff's promissory note and/or contracts. This deprived Plaintiff of vital financial information needed to make informed decisions about her loan, constituting **deceptive practices** likely to **mislead** a reasonable consumer. (**Zlotnick v. Premier Sales Grp., Inc., 480 F.3d 1281 (11th Cir. 2007)**).

76. In **Rojaas v. CitiMortgage, Inc., 2011 WL 2711370 (E.D. Cal. July 13, 2011)**, the court held that failure to disclose securitization can support claims of fraud or misrepresentation when the borrower is misled about the true holder of the note. Similarly, in **Kelly v. Palmer, Reifler & Assocs., P.A., 681 F. Supp. 2d 1356 (S.D. Fla. 2010)**, the court ruled that attempting to collect without legal standing, as Bridgecrest did, constitutes unfair **practice** under **FDUTPA**.

77. Defendants also misrepresented their authority to collect payments and repossess Plaintiff's vehicle without proper assignment or validation of the debt, causing financial and emotional harm. (**Humphrey v. Navient Solutions, Inc., 2020 WL 4013046 (M.D. Fla. 2020)**).

78. Defendants' repeated refusal to validate the debt (Exhibits B, G, and I) and report negative information to credit agencies constitutes deceptive practices under **Fla. Stat. § 501.204**, which prohibits misleading or unfair acts in trade or commerce.

79. Bridgecrest engaged in the following deceptive and unfair practices under FDUTPA:

   1. **Collecting payments without a valid assignment**, misleading Plaintiff into believing she had an obligation to Bridgecrest. (**Kelly v. Palmer, Reifler & Assocs., P.A., 681 F. Supp. 2d 1356 (S.D. Fla. 2010)**).

   2. **Failing to disclose securitization and hypothecation**, which impacted Plaintiff's rights to know who held and controlled her debt. (**Rojaas v. CitiMortgage, Inc., 2011 WL 2711370 (E.D. Cal. July 13, 2011)**).

   3. **Refusing to validate the debt** and repossessing Plaintiff's vehicle without proper authority, misleading Plaintiff and violating FDUTPA. (**Morgan v. AT&T Wireless Servs., Inc., 993 So. 2d 942 (Fla. Dist. Ct. App. 2008)**).

4. **Failing to disclose the ongoing business relationship with Carvana**, which was material to Plaintiff's understanding of the loan's servicing and securitization.

5. Acting with **intent to deceive** or with **reckless disregard** for Plaintiff's rights, engaging in **unfair trade practices** prohibited by FDUTPA. (**Zlotnick v. Premier Sales Grp., Inc., 480 F.3d 1281 (11th Cir. 2007)**).

80. As a direct result of Defendants' violations of FDUTPA, Plaintiff **suffered actual economic damages**, including **financial losses from damage to her credit score**, **loss of personal property**, and **emotional distress** from the **harm to her credit and reputation**.

81. Pursuant to **Fla. Stat. § 501.211(2)** and **§ 501.2105**, Plaintiff seeks:

1. **Economic damages** of $474,238.30.

2. **Emotional distress and reputational harm** damages of $300,000.

3. **Punitive damages** of $6,977,144.70.

4. **Statutory Damages** as permitted under **FDUTPA** for each deceptive and unfair practice committed by Defendants.

5. **Attorney's fees and costs** under **FDUTPA**.

6. **Any other relief** deemed appropriate by the Court.

**Prayer for Relief**

WHEREFORE, Plaintiff, **Kerry Irene Holyoak**, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants **Bridgecrest Acceptance Corporation**, **Bridgecrest Credit Company, LLC**, as agent and servicer for **Carvana, LLC**, and **Carvana, LLC**, and award the following relief:

1. **Declaratory Relief**:

a. Declaratory relief stating that all payments collected by Bridgecrest were unlawfully obtained due to the lack of a valid assignment and the failure to validate the debt under the **FDCPA**. This Court should declare that Bridgecrest has no legal right to further collection efforts and order the **immediate removal of all negatively reported items from credit reporting agencies**.

2. **Restitution**:

a. Restitution of all payments wrongfully collected by Defendants, totaling **$21,874**, under **Counts I, II, IV, and V**.

3. Plaintiff seeks **economic damages** under **Counts I, II, III, and V**, for a total of **$452,363.80**, including unauthorized payment collections, repossession costs, and the financial impact on Plaintiff's credit score."

a. Repossession costs totaling **$21,005.40**.

b. Loss of personal property in the amount of **$11,540**.

c. **Replacement cost of the vehicle**, totaling **$87,369.60**

d. Damage to Plaintiff's RV during **Hurricane Milton**, totaling **$29,000**.

e. Financial cost due to the impact on Plaintiff's credit score, totaling **$303,448.80**.

4. **Emotional Distress and Reputational Harm Damages**:

a. Damages for stress, anxiety, and other mental distress resulting from Defendants' unlawful collection practices and wrongful repossession, totaling **$300,000**, under **Counts I, II, III, and V**.

b. The emotional distress and reputational harm were exacerbated by Defendants' refusal to validate the debt even after being put on notice by Plaintiff's repeated requests. This willful and continued misconduct caused significant reputational

harm, as evidenced by Plaintiff's drop in credit score and her inability to secure housing or other financial opportunities.

c.  Plaintiff seeks **emotional distress damages** in the amount of **$300,000** for the extreme emotional and reputational harm suffered during Hurricane Helene and Hurricane Milton, exacerbated by the wrongful repossession of her vehicle. These damages are recoverable under both **FDCPA** and **FDUTPA** as emotional harm resulting from unfair debt collection practices, **Counts I and V.**

5.  **Statutory Damages**:

    a.  **Up to $1,000** under **15 U.S.C. § 1692k(a)(2)(A)** for **FDCPA violations**.

    b.  Statutory damages as permitted under **FDUTPA** for each deceptive and unfair practice committed by Defendants.

6.  **Punitive Damages**:

    a.  Punitive damages to deter Defendants from future reckless and willful misconduct, totaling **$6,977,144.70**, under **Counts III and V**.

7.  **Attorney's Fees and Costs**:

    a.  Attorney's fees and costs as allowed under the **FDCPA** and **FDUTPA**, or costs as a **pro se** litigant if representation is not secured.

8.  **Additional Relief**:

    a.  Any other relief this Court deems just and proper under the circumstances.

9.  **Parties Involved**:

- A declaration that no additional parties are required to effectuate full relief, as Defendants **Bridgecrest Acceptance Corporation**, **Carvana, LLC**, and **Bridgecrest Credit Company, LLC** encompass all entities involved in the contract and its enforcement.

Dated:  25 October 2024
Respectfully submitted,

By: */s/ Kerry Irene Holyoak*
**Kerry Irene Holyoak**
*Plaintiff, Pro Se*
3520 S Nova Road, Lot 448
Port Orange, FL 32129
Email: kerry.i.holyoak@gmail.com

### Certificate of Service

I hereby certify that a true and correct copy of the foregoing **Second Amended Complaint** has been served via **email** on this **25 day of October 2024** upon the following:

| | |
|---|---|
| **Erica C. Baines** | **Sabrina A. Neff** |
| Husch Blackwell LLP | Husch Blackwell LLP |
| 120 South Riverside Plaza, Suite 2200 | 120 South Riverside Plaza, Suite 2200 |
| Chicago, IL 60606 | Chicago, IL 60606 |
| **Erica.baines@huschblackwell.com** | **Sabrina.neff@huschblackwell.com** |
| Attorney for Defendant Bridgecrest | Attorney for Defendant Bridgecrest |
| Acceptance Corporation | Acceptance Corporation |

I further certify that a true and correct copy of the foregoing **Second Amended Complaint** will be served by private process server immediately upon the issuance of a Summons from the Clerk of the Federal Court, to the following parties:

| | |
|---|---|
| Carvana, LLC | Bridgecrest Credit Company, LLC |
| Corporation Service Company | Corporation Service Company |
| 8825 N 23rd Avenue, Suite 100 | 1201 Hays Street, |
| Phoenix, AZ 85021 | Tallahassee, FL 32301-2525 |

By: */s/ Kerry Irene Holyoak*
**Kerry Irene Holyoak**
*Plaintiff in pro se*
3520 S Nova Road, Lot 448
Port Orange, FL 32129
Email: kerry.i.holyoak@gmail.com